NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Brian Patrick HUGHES,<br><br>          Plaintiff,<br><br>v.<br><br>STATE OF NEW JERSEY, OFFICE OF THE PUBLIC DEFENDER/DEPARTMENT OF THE PUBLIC ADVOCATE; Joan VAN PELT, JANE AND JOHN DOES 1-10,<br><br>          Defendants. | Civ. No. 11-01442<br><br>MEMORANDUM OPINION |

THOMPSON, U.S.D.J.

### INTRODUCTION

This matter has come before the Court on Defendant Joan Van Pelt's ("Ms. Van Pelt's") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. No. 22). Plaintiff Brian Patrick Hughes ("Plaintiff") opposes the Motion, and has filed a Cross-Motion to Amend the Complaint, (Doc. No. 27), which in turn is opposed by Ms. Van Pelt and the State Defendants,[1] (collectively "Defendants"), (Doc. No. 32). The Court has decided the motions based upon the written and oral submissions of the parties. For the reasons included herein, the Court will deny Plaintiff's cross-motion to amend, and grant Ms. Van Pelt's motion for summary judgment.

### Background

The present motions stem from Plaintiff's 2011 suit claiming various rights violations and unlawful employment practices on the part of Ms. Van Pelt, the State Defendants, and

---

[1] The State of New Jersey and the Office of the Public Defender/Department of the Public Advocate.

various other unidentified individuals.  For the purposes of this background section only, the Court will rely principally on the facts asserted in the initial Complaint so as to provide context for the litigation.  The Court will refer to the allegations in Plaintiff's proposed amended Complaint and Ms. Van Pelt's Statement of Material Facts where relevant.

1. <u>Summary of the Allegations brought in the Initial Complaint</u>

Plaintiff, a New Jersey resident, has been a State employee since September 2002.  (Doc. No. 1, "Compl." at ¶¶ 1-2).  In February 2004, Plaintiff was hired as a staff attorney in the Alternative Commitment Unit ("ACU") of the Department of the Public Advocate/New Jersey Office of the Public Defender, a position he continues to hold today.[2]  (Compl. at ¶¶ 2-4).  New Jersey Resident and Deputy Public Defender Ms. Van Pelt was Plaintiff's supervisor from 2006 until 2008.  (Compl. at ¶¶ 5, 27, 70).

The bases for Plaintiff's claims span various years and events.  Plaintiff alleges that during his entire tenure with the ACU, the unit has experienced staffing issues that have increased the pressure and stress on staff attorneys and other personnel.  (Compl. at ¶ 29). Plaintiff himself has allegedly experienced many periods of severe anxiety and occasional panic attacks.  (Compl. at ¶ 30).  In December 2006, Plaintiff's anxiety and panic attacks reached such a level that he telephoned his director, Patrick D. Reilly, to request time off and to be relieved of some of the more stressful aspects of his position.  (Compl. at ¶ 32).  For example, Plaintiff apparently requested permission to handle appellate matters without a trial calendar.  (Compl. at ¶ 33). While Mr. Reilly initially agreed to permit Plaintiff a few days off, Richard Friedman, Plaintiff's immediate supervisor, informed him that his full request could not be accommodated,

---

[2] The Department of the Public Advocate is now part of the New Jersey Office of the Public Defender.  (Doc. No. 1 ¶ 3).

and that Plaintiff's only alternative to his current workload was to resign from office. (*See* Compl. at ¶ 33).

On June 19, 2007, Plaintiff was involved in a serious car accident in which he suffered a concussion. (Compl. at ¶ 35). As a result, Plaintiff took medical leave until the end of June. (Compl. at ¶ 35). In early July, Plaintiff requested additional time off due to his head injury. (Compl. at ¶ 36). Ms. Van Pelt allegedly responded that there would be consequences should Plaintiff take time off and fail to handle his full calendar. (Compl. at ¶ 37). Around that same time, Plaintiff's doctor recommended that Plaintiff relax his work schedule in the interest of recovery and to refrain from trying cases. (Compl. at ¶¶ 36, 37). Despite this advice, Plaintiff alleges he returned to work and handled his full calendar. (Compl. at ¶ 42).

In August 2007, two major events occurred for the purposes of this lawsuit. First, Plaintiff applied for and was hired in the position of Union County Assistant Prosecutor. (Compl. at ¶¶ 43-44). Second, it was discovered that Plaintiff had a tumor on his pituitary gland and would need surgery for removal. (Compl. at ¶ 45). After the diagnosis, Plaintiff informed Ms. Van Pelt of his condition, as well as his intention to take time off for surgery and recuperation under the Family Medical Leave Act ("FMLA"). (Compl. at ¶ 48).

Plaintiff alleges that Ms. Van Pelt subsequently informed Union County Prosecutor Ted Romankow and a series of public officers and employees of Plaintiff's condition. (Compl. at ¶ 50). In September 2007, Mr. Romankow allegedly telephoned Plaintiff and told him that Ms. Van Pelt had informed him of Plaintiff's brain tumor. (Compl. at ¶ 51). As a result, Mr. Romankow stated he would have to freeze Plaintiff's hiring. (Compl. at ¶ 51). Mr. Romankow further urged Plaintiff to consider withdrawing his candidacy. (Compl. at ¶ 51).

Between July 2007 and September 2007, Plaintiff alleges that his caseload was almost doubled, (Compl. at ¶ 54), and that Ms. Van Pelt told him that, as his department was understaffed, Plaintiff would need to be replaced. (Comp. at ¶ 55). She purportedly warned of consequences should Plaintiff not tender his resignation. (Compl. at ¶ 55).

In late September 2007, Plaintiff took a medical leave of absence pursuant to FMLA. (Compl. at ¶ 56). Plaintiff alleges that despite his medical condition, Ms. Van Pelt continued to list him as trial counsel in certain October cases. (Compl. at ¶ 57). Plaintiff was also informed that if he failed to appear in front of Judge Serena Perretti (assumedly for his assigned cases), he would be held in contempt of court. (Compl. at ¶ 57). Ms. Van Pelt also conducted an employee evaluation and failed Plaintiff in two of the five evaluation categories, noting that Plaintiff was incompetent and had engaged in unethical conduct as counsel and before tribunals. (Compl. at ¶ 58).

Concurrent with the above post-diagnosis developments, Plaintiff experienced other personal problems, and suffered a drug and alcohol abuse relapse. (Compl. at ¶ 66). His wife obtained a restraining order and he was arrested by the Westfield Police Department, although all charges were subsequently dropped. (Compl. at ¶ 67). Plaintiff asserts he successfully completed a substance abuse rehabilitation program prior to his brain surgery. (Compl. at ¶ 68).

Two weeks before his November 2007 surgery, Plaintiff allegedly received an email from Ms. Van Pelt at the behest of Mr. Romankow, in which she implored Plaintiff to formally withdraw his candidacy as a Union County Assistant Prosecutor, and asserted that such a withdrawal would be better for Plaintiff in the long run. (Compl. at ¶ 59). Plaintiff subsequently withdrew his candidacy and underwent surgery. (Compl. at ¶ 47).

Upon his return in January 2008, Plaintiff received an evaluation form and notice of discipline from Ms. Van Pelt in his mailbox. (Compl. at ¶ 47). Ms. Van Pelt purportedly wrote an internal memorandum noting that Plaintiff's file did not contain a signed Performance Evaluation System ("PES") for the period of September 2007 through August 2008 [sic]. (Compl. at ¶ 71). Ms. Van Pelt included a PES for the period of June 2007 through September 2007, and requested any comments from Plaintiff by January 22, 2008. (Compl. at ¶¶ 71-72). A second internal memorandum dated January 17, 2008 was entitled "Disciplinary Action." (Compl. at ¶ 76). In that memorandum, Ms. Van Pelt documented areas of concern and/or deficiencies related to "the problem . . . addressed during [Plaintiff's] leave of absence." (Compl. at ¶ 74). Ms. Van Pelt further requested that her supervisor commence progressive disciplinary action. (Compl. at ¶ 75). After three days, Plaintiff returned to medical leave for further recovery. (Compl. at ¶ 47).

Around the time of Plaintiff's return in May 2008, Patrick Reilly responded to a request from Plaintiff to file a recusal motion of Judge Perretti from all cases for which Plaintiff was assigned as counsel. (Compl. at ¶ 79). Mr. Reilly modified Plaintiff's schedule so as to temporarily exclude appearances before Judge Perretti, (Compl. at ¶¶ 79-80), but believed that the recusal application would *not*, in fact, be in the best interests of Plaintiff's clients. (Compl. at ¶ 81). Plaintiff alleges that he sought to file the motion out of appropriate concern that his clients would be unfairly prejudiced due to prior conflicts between Judge Perretti and himself. (Compl. at ¶ 82).

In June 2008 after the filing of a Grievance against Ms. Van Pelt, Plaintiff was reassigned to the supervision of Richard Friedman. (Compl. at ¶¶ 70, 77). Plaintiff stated he agreed to this solution based upon his express understanding that he would no longer be required to interact

5

with Ms. Van Pelt. (Compl. at ¶ 78). However, Plaintiff contends Ms. Van Pelt continued to attend case management conferences with Plaintiff through June 2009, exhibiting the same, if not heightened, hostility toward Plaintiff. (Compl. at ¶ 78).

On or about September 12, 2008, Plaintiff (1) filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"); (2) filed an administrative complaint; and (3) served a tort claim notice. (Compl. at ¶¶ 84-85). In his EEOC Charge, Plaintiff alleged that after disclosing his disabilities to his employer, his request for reasonable accommodation was denied, and he was advised that he would have to seek new employment. (Compl. at ¶ 86). Plaintiff further alleged that the decision of his immediate supervisor to share information regarding his disability with a prospective employer prevented Plaintiff from obtaining new employment. (Compl. at ¶ 86). Finally, Plaintiff alleged that he been improperly subjected to discipline by his employer for performance issues related to his disability. (Compl. at ¶ 86).[3]

After the above filings, Plaintiff alleges that he was the recipient of bullying, work place hostility, and improperly administered evaluations. (Compl. at ¶ 85). In July 2009, Plaintiff wrote to Mr. Friedman about Plaintiff's 2008/2009 interim PES rating, pointing out many irregularities in the evaluation process as applied by his supervisors. (Compl. at ¶ 83). Plaintiff also summarized events related to his disability and his need for reasonable accommodation. (Compl. at ¶ 83).

---

[3] Plaintiff also details here and elsewhere in the Complaint an episode with Ms. Van Pelt that occurred in March 2006, prior to Ms. Van Pelt's designation as Plaintiff's supervisor. According to Plaintiff, Ms. Van Pelt reprimanded Plaintiff in a meeting for not having signed off on an appellate transcript bill and, when Plaintiff attempted to leave, purportedly put her hands on him so that he fell back into his chair. (Compl. at ¶ 88). The episode was witnessed by a union shop steward who reported it to union representatives. (Compl. at ¶ 90). This episode eventually led Plaintiff to file a Grievance, which in turn ultimately led to Plaintiff's removal from Ms. Van Pelt's supervision in 2008. (Compl. at ¶ 89). Plaintiff alleges that his relationship with Ms. Van Pelt deteriorated even further after the Grievance. (Compl. at ¶ 90).

In August 2009, Plaintiff filed an additional EEOC Charge concerning events that occurred after the 2008 filing, principally those involving efforts to transfer positions or advance within the Public Defender's Office. For instance, Plaintiff explained that prior to filing his 2008 charge, Plaintiff and Defendants had negotiated Plaintiff's temporary transfer to a position in a South Jersey facility ("Gibbsboro"). (Compl. at ¶¶ 105, 106). After Defendants received notice of the 2008 EEOC Charge, the Gibbsboro transfer was reframed as an offer of settlement, and Plaintiff's transfer was made contingent upon the Charge's withdrawal. (Compl. at ¶¶ 109-11). As no withdrawal was forthcoming, in January 2010 an attorney with allegedly less experience and seniority than Plaintiff was transferred in Plaintiff's place out of the Trenton office and into the Gibbsboro office. (Compl. at ¶ 115).

In August 2010, Plaintiff allegedly made a direct application for an attorney job in the Ocean County trial region where there were vacancies. (Compl. at ¶ 116). After receiving no response, Plaintiff later learned that the position had been given to someone who allegedly had significantly less experience and seniority than he. (Compl. at ¶¶ 116-17). Plaintiff also asserts that in October 2010 he repeatedly requested consideration for 10 positions with the Public Defender's Office that were available throughout the State, but was not granted an interview. (Doc. Nos. 118-19). Plaintiff alleges that at least one of the positions went to a 2009 law graduate. (Doc. No. 120).

On March 14, 2011, Plaintiff filed the current action against Ms. Van Pelt, the State Defendants, and various Jane and John Does. (Compl.). Plaintiff's Complaint included nine counts. Counts I, II, and III alleged retaliation and discrimination under the Americans with Disabilities Act of 1990, § 2 *et seq.*, 42 U.S.C. § 12101 *et seq.*, ("ADA"), and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.*, ("NJLAD"). Counts IV and V alleged

discrimination and retaliation under the Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.*, ("FMLA").  Counts VI, VII, VIII, and IX alleged several tort claims, including public disclosure of private facts, tortious interference with a First Amendment right to keep medical information secret under 42 U.S.C. § 1983, tortious interference with an employment contract, and intentional infliction of emotional distress.

On July 25, 2011, the State Defendants, in lieu of an answer, moved for partial dismissal of Plaintiff's Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) based upon sovereign immunity and the expiration of the applicable statute of limitations.  (Doc. No. 5).

In an order and opinion dated March 6, 2012 (the "March 6 Order"), the Court dismissed Plaintiff's NJLAD, ADA, FMLA, and § 1983 claims against the State Defendants.  (Doc. No. 15).  The Court further dismissed Plaintiff's NJLAD, ADA, and § 1983 claims against Ms. Van Pelt in her official capacity.  (Doc. No. 15).  Finally, the Court found no individual liability under the NJLAD or the ADA.  (Doc. No. 15).

In evaluating the above claims, the Court first reviewed the three main exceptions to Eleventh Amendment immunity: (1) abrogation by an Act of Congress; (2) waiver by state consent; and (3) suits against individual state officials for prospective relief and to remedy an ongoing violation of federal law.  *M.A. ex rel. E.S. v. State-Operated School Dist. of City of Newark*, 344 F.3d 335, 345-46 (3d Cir. 2003) (citing *MCI Telecommunication Corp. v. Bell Atlantic-Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001)).  Turning to Plaintiff's claims, the Court found, in accordance with previous court opinions from this District, that New Jersey has failed to explicitly waive sovereign immunity with regards to the NJLAD.  (Doc. No. 15).  Thus, the Court dismissed Plaintiff's NJLAD claims against the State Defendants and any individual

defendants in their official capacity. (Doc. No. 15). Moreover, because individual liability under NJLAD is contingent upon a finding that the employee aided and abetted the employer's discrimination claim, the Court found there could be no individual liability here where the Eleventh Amendment shields the employer. (Doc. No. 15).

After dismissing Plaintiff's claims under the NJLAD, the Court turned to Plaintiff's ADA claims. (Doc. No. 15). The Court found that Plaintiff had failed to bring cognizable claims under either Titles II or V of the ADA.[4] (Doc. No. 15). First, Plaintiff had not alleged any denial of services as a result of his disability so as to qualify to bring suit under Title II.[5] (Doc. No. 15). The Court was further persuaded that Congress had *not* abrogated sovereign immunity under Title V. (Doc. No. 15). Finally, the Court found there could be no individual liability under either Title. (Doc. No. 15).

Within the Court's discussion of Plaintiff's Title V claim, the Court rejected Plaintiff's attempts to bring suit under any exception permitted by *Ex parte Young*. (Doc. No. 15). As summarized in *Green v. Mansour*, the Supreme Court in *Young* "created an exception to th[e] general principle [of sovereign immunity] by asserting that a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State." 474 U.S. 64, 68 (citing *Young*, 209 U.S. 123, 159-160 (1908)). *Young* also held that "the

---

[4] Jurisdiction would also be inappropriate under Title I. The Supreme Court's ruling in *Board of Trustees of University of Alabama v. Garrett* excluded private suits against state employers seeking monetary damages under Title I. 531 U.S. 356, 374 (2001). Moreover, the Third Circuit has emphasized that individual defendants, such as Ms. Van Pelt, cannot be held liable in their individual capacities under Title I. *Emerson v. Thiel College*, 96 F.3d 184, 189 (3d Cir. 2002). The Supreme Court has noted, however, that a Title I suit may be brought by private individuals in actions for injunctive relief under *Ex parte Young*. *Id.* In its March 6 Order, however, the Court found that Plaintiff had failed to bring forward a claim for injunctive relief that qualified under *Ex parte Young*. (Doc. No. 15 at 7).

[5] Even if he had alleged a denial of such services, the Court found there could be no individual liability under Title II. (Doc. No. 15).

9

Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." *Id.* (citing *Young*, 209 U.S. at 155-156, 159). The Court found, however, that Plaintiff failed to qualify for an exception under *Young* because he had failed to state the kind of prospective injunctive relief sought. (Doc. No. 15).

Turning to Plaintiff's FMLA claims, the Court found that Plaintiff's suit, brought under the "self-care" provision of the FMLA, could not be brought against the State. *See Banks v. Court of Common Please FJD*, 342 Fed. Appx. 818, 821 (3d Cir. 2009) ("[P]rivate suits for damages may not be brought against states for alleged violations of the FMLA, which arise under the Act's self-care provision."). As for Plaintiff's § 1983 claim, the Court found the State Defendants immune from suit because they failed to constitute "persons" under the statute, and that suit against Ms. Van Pelt in her *official* capacity was also barred. (Doc. No. 15). Finally, the Court found Plaintiff's tort claims untimely under Title 59 of the New Jersey Statutes, as Plaintiff had failed, without sufficient justification, to comply with the statute's notice and time requirements. (Doc. No. 15).

Thus, after issuance of the Court's March 6 Order, only Counts IV and V, alleging FMLA violations against Ms. Van Pelt in her official capacity, and Count VII, alleging violations of Plaintiff's First Amendment right to keep his medical records private against Ms. Van Pelt in her individual capacity, remained. (Doc. No. 15). In issuing its final order, the Court did not specify whether dismissal of the other claims was with or without prejudice. (Doc. No. 15).

On May 2, 2012, the Magistrate Judge issued the Pretrial Scheduling Order, which set July 13, 2012 as the deadline for the filing of any amended pleadings. (Doc. No. 18). Because

10

of ongoing settlement attempts between the parties, Plaintiff requested and was granted a 30-day extension of that date. (Doc. No. 20).

On October 12, 2012, Ms. Van Pelt moved for summary judgment on the remaining counts. (Doc. No. 22). Plaintiff opposed the motion and cross-moved to amend his Complaint, adding three named Defendants (Dale Jones, Richard Friedman, and Patrick Reilly) and making various adjustments to the proposed counts and supporting facts. (Doc. No. 27). Defendants have, in turn, opposed the motion. (Doc. No. 32).

## Analysis

The Court will first analyze Plaintiff's cross-motion to amend the Complaint. The Court will then evaluate Ms. Van Pelt's motion for summary judgment.

### I. Plaintiff's Cross-Motion to Amend the Complaint

A) Dismissal of Plaintiff's Claims under the Initial Complaint

Defendants advance three main arguments for why Plaintiff's cross-motion to amend should be denied. First, Defendants argue that the Court dismissed the majority of the proposed amended claims with prejudice in its March 6 Order. Second, Defendants argue the proposed amended Complaint should be barred as untimely under the Scheduling Order. Finally, Defendants argue Plaintiff's claims as proposed should be dismissed as futile.

As an initial matter, the Court recognizes that it failed to specify in its March 6 Order that dismissal was without prejudice. (Doc. No. 15). Ordinarily, where a court fails to specify that an involuntary dismissal is without prejudice, that dismissal "operates as an adjudication on the merits" under Federal Rule of Procedure 41(b).

The inclination in this Circuit, however, is to grant Plaintiff at least an opportunity for curative amendment. *See, e.g.*, *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) ("We have

11

held that even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."); *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) ("[D]ismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility."); *Borelli v. City of Reading*, 532 F.2d 950, 951 (3d Cir. 1976).  While the Court believes that the nature of many of Plaintiff's claims would make any amendment futile, for purposes of form the Court will treat Plaintiff's proposed amended Complaint as though the previous order had been without prejudice.

    B) <u>Leave to Amend the Complaint Outside of the Scheduling Order</u>

The next step, then, is to determine whether Defendants' argument that amendment should be barred due to noncompliance with the Scheduling Order is persuasive.  Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent."  This is a more restrictive standard than its Rule 15(a) counterpart, which counsels courts to liberally grant leave to amend where the interests of justice so require. *See* Fed. R. Civ. P. 15(a); *see also Foman v. Davis,* 371 U.S. 178, 182 (1962); *Dole v. Arco Chem. Co.,* 921 F.2d 484 (3d Cir. 1990).  Although the Third Circuit has not specifically addressed whether untimely motions to amend should be considered under Rule 16 as opposed to Rule 15, many district courts have assumed the Circuit would indeed apply the more restrictive 16(b)(4) standard.  *See, e.g.*, *Watson v. Sunrise Sr. Living Services, Inc.*, CIV.A. 10-230 KM, 2013 WL 103966, at * 10 (D.N.J. Jan. 8, 2013) ("There is 'tension' between the standards of the two Rules, which the Third Circuit Court of Appeals has not resolved directly . . . . [but] Third Circuit courts 'have consistently [found that] a party seeking to amend the pleadings *after the*

*deadline set by the Court* must satisfy the requirements of Rule 16(b)(4)." (internal citations omitted)).

Under Rule 16(b)(4), the Court has broad "discretion in determining what kind of showing the moving party must make in order to satisfy [the Rule's] good cause requirement." *Phillips v. Greben*, Civil No. 04-5590 (GEB), 2006 WL 3069475, *6 (D.N.J. Oct. 27, 2006). Whether good cause exists depends upon the *diligence* of the moving party: "[T]he moving party must show that despite its diligence, it could not reasonably have met the scheduling order deadline." *Hutchins v. United Parcel Service, Inc.*, No. 01 CV 1462 WJM, 2005 WL 1793695 (D.N.J. July 26, 2005). A movant may also demonstrate good cause where it can show that its "delay in filing the motion to amend stemmed from 'any mistake, excusable neglect or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order.'" *Greben*, 2006 WL 3069475, at *6 (quoting *Newton v. Dana Corp. Parish Division,* 1995 WL 368172, at *1 (E.D. Pa. 1995)).

In deciding whether or not to permit Plaintiff to amend his pleadings, the Court emphasizes the important principles behind a scheduling order in managing the expectations and resources of the litigating parties. *See, e.g.*, *Chiropractic Alliance of New Jersey v. Parisi*, 164 F.R.D. 618, 620 (D.N.J. 1996) (quoting *Newton v. A.C. & S., Inc.*, 918 F.2d 1121, 1126 (3d Cir. 1990) ("The purpose of Rule 16 is to maximize the efficiency of the court system by insisting that attorneys and clients cooperate with the court and abandon practices which unreasonably interfere with the expeditious management of cases.").

Under the original scheduling order, amended pleadings were due by July 13, 2012. (Doc. No. 18). Plaintiff requested, and was granted, a 30-day extension, citing attempts by the parties to resolve the proceedings amicably as the reason for delay. (Doc. No. 20). No amended

13

pleadings, however, were submitted within the extended deadline. In fact, Plaintiff made no move to submit an amended pleading until *after* Ms. Van Pelt's October 12, 2012 motion for summary judgment. Because Ms. Van Pelt initially failed to submit a Statement of Material Facts pursuant to Local Rule 56.1 with her motion, and because Plaintiff's counsel purportedly could not effectively communicate with Plaintiff in the days following Ms. Van Pelt's submission due to Plaintiff's placement on disability leave, Plaintiff did not respond to the summary judgment motion until December. (Doc. Nos. 24, 25, 26). Thus, Plaintiff's proposed amended Complaint was submitted more than four months after the deadline set by the Court for the amendment of pleadings. (Doc. No. 27).

In analyzing whether the delay in filing occurred in spite of Plaintiff's diligence, or whether Plaintiff has demonstrated good cause, Defendants rightly point out that (1) Plaintiff has offered no explanations for the delay in filing; and (2) the information Plaintiff seeks to add was previously in his possession. Indeed, in his briefing, Plaintiff's only explicit argument for amendment is a recitation of the standard under Rule 15(a). Moreover, Plaintiff's assertions of "recently discovered" evidence appear to involve facts that became available to Plaintiff in January 2012, more than 10 months prior to Plaintiff's proposed amendment.[6] Plaintiff has not offered any further rebuttal briefing to counter Defendant's arguments, and provided none in oral argument.

Given Plaintiff's failure to demonstrate either (1) diligent action or (2) some other mistake or excusable neglect that might account for a lack of compliance with the Scheduling Order, and given the important principles behind effective case management and the protection

---

[6] Specifically, Plaintiff claims that he became aware of a possible violation of the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1, *et seq.*, on January 26, 2012. (See Doc. No. 27 at ¶¶ 162-64).

of the interests of non-moving parties, the Court declines to permit amendment in this case. Plaintiff's cross-motion to amend is, therefore, denied.

## II. Ms. Van Pelt's Motion for Summary Judgment

As the Court has dismissed Plaintiff's proposed amended Complaint as untimely, the Court will now review Ms. Van Pelt's motion for summary judgment on the remaining claims in the initial Complaint. Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the Court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits," and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted).

The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). Summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248-49. In other words, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322.

In her motion for summary judgment, Ms. Van Pelt moves to dismiss the remaining FMLA and § 1983 claims against her. (Doc. No. 22). As an initial matter, Plaintiff, in his briefing supporting his proposed amended Complaint, conceded his FMLA claims. (*See* Doc.

No. 27, Att. 4 at 4) ("Plaintiff has eliminated his claims based upon the Family Medical Leave Act"). Thus, the Court dismisses those claims with prejudice.[7]

Turning to the remaining § 1983 claim, which is designated as Count VII in the initial Complaint and Count IV in the now-dismissed proposed amended Complaint, Plaintiff alleges that Ms. Van Pelt violated his First Amendment rights by disclosing his private medical information to others inside and outside of her office. (Doc. No. 24, Statement of Material Facts, "SMF," at ¶¶ 7-9). When calculating the statute of limitations for a § 1983 claim, courts look to state law for the "general, residual statute of limitations for personal injury," and apply that period to the accrual of a claim. *Lake v. Arnold*, 232 F.3d 360, 368 (3d Cir. 2000). In New Jersey, the relevant statute of limitations is two years. N.J.S.A. § 2A:14-2.

According to Ms. Van Pelt, Plaintiff alleges that immediately after he informed Ms. Van Pelt of his medical condition in August of 2007, she informed certain named individuals of Plaintiff's medical condition. (SMF at ¶¶ 10-11; Doc. No. 27, Att. 3, "Pl.'s Resp. to SMF," at ¶ 11). After Plaintiff applied and was accepted for a position with the Union County Prosecutor's Office that same August, Plaintiff asserts that Ms. Van Pelt informed the Prosecutor's Office of Plaintiff's condition the subsequent September. (SMF at ¶¶ 12-13). The Prosecutor's Office then purportedly informed Plaintiff of Ms. Van Pelt's disclosure, and stated that he should consider withdrawing his candidacy as a result of his condition. (SMF at ¶ 14).

Plaintiff further alleges that in August 2007, Plaintiff advised Ms. Van Pelt of an intended medical leave for six to eight months, and that she immediately shared the information with other staff members following the conversation. (SMF at ¶ 15). Finally, Plaintiff has alleged that after

---

[7] The Court notes that even if Plaintiff had not, in effect, conceded his FMLA claims, they too would be barred on the basis of an expired statute of limitations.

surgery on November 19, 2007, Plaintiff's medical leave continued through May 2008, with a three-day return in January 2008. (SMF at ¶ 16).

Based upon the above allegations, Ms. Van Pelt argues that Plaintiff's Complaint makes no claims concerning any disclosure by Ms. Van Pelt of Plaintiff's medical information after January 2008. As Plaintiff's lawsuit was not filed until March 14, 2011, more than two years later, Ms. Van Pelt argues that there are no timely allegations of improper disclosures, and that such claims are therefore time-barred.

To counter Ms. Van Pelt's contention, Plaintiff does not offer specific examples of violations within the two years prior to March 14, 2011. Instead, Plaintiff makes the general assertion that there have been timely violations. (Doc. No. 27, Att. 4 at 17) ("[D]efendants allege that there is not a single allegation against Ms. Van Pelt occurring later than January 2008. Clearly, there are."). Moreover, Plaintiff argues throughout his briefing that further discovery is needed. (*See generally*, Doc. No. 27, Att. 4).

In addressing these responses, the Court notes that Plaintiff's general assertions of timely violations cannot serve as a counter to Ms. Van Pelt's assertions in her Statement of Material Facts. First, vague contentions on the part of Plaintiff, with no supporting facts, is improper pursuant to both Federal Rule of Civil Procedure 56(c)(1)(A) and Local Rule 56.1. "Summary judgment will not be denied based on mere allegations or denials in the pleadings; instead, some evidence must be produced to support a material fact." *Malik v. Hannah*, 799 F. Supp. 2d 355, 358 (D.N.J. 2011) *reconsideration denied*, CIV. 05-3901 JBS/JS, 2012 WL 359747 (D.N.J. Feb. 2, 2012) (citations omitted). A mere statement by the non-movant that he or she disputes a fact put forward by the movant, without supporting evidence from the record to substantiate that dispute, is insufficient to survive summary judgment. *Id.* Here, Plaintiff fails to cite to any

specific place in the record or provide any affidavit alleging specific instances of disclosure after January 2008.

Second, the Court emphasizes that discovery should not be manipulated so as to facilitate a fishing expedition, but should be exercised as a fact-finding tool in support of the actual complaint.  *See, e.g.*, *Ogbin v. Citifinancial Mortgage Co., Inc.*, CIV. 09-0023NLH, 2009 WL 4250036 (D.N.J. Nov. 19, 2009) (citing *Bell Atlantic v. Twombly,* 127 S. Ct. 1955, 1969 n. 8 (2007) ("Discovery cannot serve as a fishing expedition through which plaintiffs search for evidence to support facts they have not yet pleaded.")); *see also Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly.*").  Here, Plaintiff makes no allegations with respect to the disclosure of medical information within the relevant statutory period in order to support discovery.

For each of the above reasons, then, the Court grants Ms. Van Pelt's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's Cross-Motion to Amend the Complaint, (Doc No. 24), and grants Ms. Van Pelt's Motion for Summary Judgment, (Doc. No. 22).  An appropriate Order accompanies this Opinion.

/s/Anne E. Thompson  
ANNE E. THOMPSON, U.S.D.J

Dated:        April, 29, 2013